CHRISTINA TAYLOR and           )
DONALD TAYLOR,                 )
                               )
        Plaintiffs,            )
v.                             )        Case No. 19-1030-JWB
                               )
LM INSURANCE CORPORATION,      )
                               )
        Defendant.             )
                               )

## **ORDER**

Plaintiffs have filed a motion (ECF No. 31) seeking to compel discovery responses from defendant in this action, which involves insurance coverage after a house fire. The parties stipulate the "fire began when, after becoming angry with her father due to an argument earlier in the day, [plaintiffs' daughter] used a lighter to ignite the bedspread of plaintiffs' bed in order to upset her father."[1] Plaintiffs allege defendant improperly denied insurance coverage after the fire, and the discovery plaintiffs seek centers on portions of the claim file defendant argues are privileged. For the reasons discussed below, the court denies plaintiffs' motion.

Background

On May 28, 2019, plaintiffs served document requests.[2] Defendant produced over 1,800 pages of documents and served a privilege log for documents that had been redacted

---

[1] ECF No. 28. The parties also stipulate plaintiffs' daughter was a resident of the home and an insured under the subject policy.

[2] ECF No. 18.

or removed pursuant to work-product protection and attorney-client privilege objections.[3] On July 29, 2019, plaintiffs e-mailed defendant to discuss deficiencies in the discovery responses.[4] Defendant supplemented its privilege log on August 20, 2019 and September 24, 2019, and served amended responses to the requests for production on September 23, 2019.[5] Plaintiffs filed the instant motion on September 30, 2019, asserting defendant's documents are not protected by attorney-client or work-product privilege, and if they are, defendant waived the privilege in a number of ways.

Also at issue in plaintiffs' motion is a deposition of a corporate representative, Sandra Reiser, who works as an adjuster in defendant's claim department. Plaintiffs deposed Ms. Reiser on August 21, 2019.[6] Plaintiffs argue she was unprepared, failed to produce relevant documents, and improperly claimed privilege for three questions. Plaintiffs ask the court to order defendant to produce Ms. Reiser for trial.

As an initial matter, defendant contends plaintiffs failed to satisfy their duty to confer under D. Kan. Rule 37.2. That rule provides:

> The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 … unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. Every certification required by Fed. R. Civ. P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes must describe with particularity the steps taken by all attorneys to resolve the issues in dispute.

---

[3] ECF No. 20.

[4] ECF No. 36-4.

[5] ECF Nos. 35 and 36-5.

[6] ECF No. 21.

> A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.

Defendant argues plaintiffs failed to describe with particularity the steps taken as to the disputed issues and insinuates plaintiffs have misstated the number and scope of conversations before plaintiffs filed the instant motion.[7]  The only written communication from plaintiffs, defendant asserts, was one e-mail on July 29, 2019, claiming the discovery responses were deficient.[8]  Plaintiffs disagree, arguing they fulfilled their duty through correspondence "setting out issues and legal authority addressing a number of issues, all of which are addressed in some form or fashion in their motion to compel."[9]  Yet plaintiffs do not appear to dispute defendant's assertion that the only formal correspondence made was one e-mail.[10]  It does seem multiple phone conferences occurred after the e-mail exchange, though the extent of those conversations is unclear from the briefing.[11]  Overall, despite the parties' disputed recitations, the court is satisfied the parties made several attempts to confer.  Although it may have been prudent for plaintiffs' counsel to at least attempt to contact defense counsel once more before filing the motion to compel, the court proceeds to the merits of plaintiffs' motion.

---

[7] ECF No. 36 at 11.

[8] *Id.* at 6.

[9] ECF No. 43 at 4.

[10] *Id.* at 4.

[11] ECF No. 36 at 12; ECF No. 43 at 3.

The motion to compel can be separated into two main issues: production of the insurance claim file and the adequacy of the corporate representative deposition. There is a separate third issue related to defendant's production of documents, which the court briefly addresses first.

Defendant's Production of Documents as Required by Fed. R. Civ. P. 34(b)(2)(E)

Plaintiffs argue defendant failed to produce responsive documents "in a manner that would indicate they are being produced in the manner they are kept in the usual course of business."[12] Plaintiffs do not seek specific relief but notes this failure has "frustrated the process, created unnecessary work, and added to the difficulty in effectively deposing the corporate designee."[13] Defendant explained it produced its records in the order they are maintained on its Navigator claims system, which includes different components.[14] Documents are collected in the order they are maintained on the Navigator claims system, then are combined into one file. Duplicate documents are not removed during the copying process, in part because some documents appear to be duplicates but are instead similar to each other.[15] It is unclear to the court what manner of production plaintiffs sought because plaintiffs do not propose an alternative method, and it appears the relevant documents have

---

[12] ECF No. 31 at 5.

[13] *Id.* at 5.

[14] Those components include "financial records, notes, and documents like emails, letters, Xactimate estimates, and attachments to the letters and emails." ECF No. 36 at 13.

[15] ECF No. 36 at 9.

been produced.  The court reminds the parties of their obligation to engage in discovery efficiently and in good faith but otherwise declines to address this issue further.

Claim File

The crux of plaintiffs' motion to compel is whether they are entitled to obtain the claim file at issue in this case.  The parties make several arguments as to the relevance, discoverability, and privilege associated with this claim file, which the court takes in turn.

Relevant and Discoverable

As a threshold issue, defendant raises the argument the claim file should not be produced based on relevance.  Notably, defendant did not assert any relevance objection in its initial response to the request for production.  Rather, in its response to the motion to compel, defendant adds what the court construes as an objection to "note that plaintiffs have failed to explain why the legal advice provided to LM Insurance's claims team is even relevant."[16]  When ruling on a motion to compel, the court considers only those objections initially asserted in response to the discovery request and relied upon in response to the motion.[17]  Objections not initially raised in response to a discovery request are generally deemed waived absent a showing of good cause.[18]  Because defendant didn't raise the

---

[16] ECF No. 36 at 14.

[17] *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *5 (D. Kan. June 12, 2019) (citing *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008)).

[18] *Ad Astra Recovery Servs., Inc.*, 2019 WL 2448569, at *5 (D. Kan. June 12, 2019).

relevance objection until the motion to compel, the court overrules the objection for that reason alone.

Turning to the merits of the objection, defendant contends LM Insurance's counsel's advice is irrelevant to the determination of coverage. Plaintiffs disagree and cite as relevant defendant's investigations and research into applicable law, the factual bases for defendant's position, and its process as to the claim handling.[19] Specifically, plaintiffs allege the documents are relevant to whether defendant had a duty to investigate the cause of the loss and, if so, whether defendant fulfilled that duty through its investigation of the facts before declining to pay.[20]

At the discovery stage, relevance is broadly construed. "[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" is deemed relevant."[21] Courts in this District have held the "initial investigation of a potential claim, made by an insurance company prior to the commencement of litigation," and not protected by any privilege, is subject to discovery."[22] The court agrees with plaintiffs. Although documents concerning the claim may otherwise be privileged or inadmissible at trial, the court is persuaded they are discoverable under this standard. Therefore, defendant's relevance objection is overruled.

---

[19] ECF No. 43 at 8-9.

[20] *Id.* at 7.

[21] *Fuller v. Dep't of Children & Families*, No. 16-2415-DDC, 2019 WL 1533231, at *2 (D. Kan. Apr. 9, 2019) (citing *Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016)).

[22] *Kannaday v. Ball*, 292 F.R.D. 640, 649 (D. Kan. 2013).

Work-Product Protection

Defendant withheld or redacted seventy-nine pages of documents in its production based on claims of work-product protection and/or attorney-client privilege.[23] The work-product doctrine is governed by the uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3). It provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Courts in this District have described the work-product standard as having two components:

> The first is what may be called the "causation" requirement. This is the basic requirement of the Rule that the document in question be produced because of the anticipation of litigation, i.e., to prepare for litigation or for trial. The second component is what may be termed a "reasonableness" limit on a party's anticipation of litigation. Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.[24]

Under the first component, work prepared in the ordinary course of business is not protected.[25] Under the second component, "the threat of litigation must be real and

---

[23] ECF No. 36-5.

[24] *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998) (quoting *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395, 1995 WL 625962, at *8 (D. Kan. Oct. 5, 1995)).

[25] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007).

imminent. The inchoate possibility, or even the likely chance of litigation, does not give rise to the privilege."[26]

Whether documents are prepared in anticipation ultimately "requires a case-by-case analysis, considering the unique factual context of the given problem."[27] The party claiming work-product protection "still must demonstrate the document was prepared principally or exclusively to assist in anticipated or ongoing litigation and establish the underlying nexus between the preparation of the document and the specific litigation."[28] For insurance investigations, "whether insurer and adjuster documents were created in anticipation of litigation depends on whether the party seeking protection can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation."[29] The work-product doctrine can apply to a party "or any representative acting on his behalf," which may include attorneys, consultants, sureties, indemnitors, insurers, or agents.[30]

To evaluate the causation component, the court looks to defendant's second supplemental privilege log to evaluate the description of documents for which it claims

---

[26] *Audiotext Commc'ns Network, Inc.*, 1995 WL 625962, at *9 (internal quotation marks and citations omitted).

[27] *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 618–19 (D. Kan. 2014) (citing *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007)).

[28] *Kannaday*, 292 F.R.D. at 649 (D. Kan. 2013).

[29] *Black & Veatch Corp.*, 297 F.R.D. at 618–19; *AKH Co. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 688–89 (D. Kan. 2014).

[30] *Black & Veatch Corp.*, 297 F.R.D. at 616–17.

work-product protection. The descriptions provide the names and titles of the people involved; in this case, the people who created the documents are either attorneys or other agents of defendant. Those descriptions citing the possibility of litigation support the application of work-product protection because they establish particular documents were not prepared in the ordinary course of business. For example, defendant sufficiently describes redacted and removed documents with language indicating documents were prepared within plaintiffs' file "for the sole purpose of seeking legal advice regarding allegations contained in attorney Kevin McMaster's letter threatening litigation on behalf of plaintiffs;"[31] "for the sole purpose of seeking legal advice regarding the claim for coverage under the terms of the subject policy and the impending litigation with plaintiffs regarding such claim;"[32] "detailing her mental impressions regarding the impending litigation;"[33] or "seeking legal advice and representation regarding lawsuit filed."[34] In contrast, entries with more general language of "for the purpose of seeking legal advice"[35] with no indication that litigation was threatened or reasonably imminent, do not meet the standard for work-product protection.

To clarify the difference, the court moves to the second component of the analysis – when that reasonable anticipation of litigation came into effect. In the insurance context,

---

[31] ECF No. 36-5.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] ECF No. 36-5.

there is no bright-line rule dictating the ordinary course of business ends as soon as the insurance decides to decline coverage.[36]  Similarly, there is no bright-line rule that once an attorney has been hired for litigation, the activities and records of the claim file are no longer subject to discovery.[37]  Anticipation of litigation "is presumed unreasonable" before a final decision is reached on the claim, though it is a rebuttable presumption, requiring the insurer to "demonstrate, by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision."[38]

Here, the court finds December 12, 2018 as the date when a reasonable anticipation of litigation existed.  On that date, plaintiffs' counsel sent a demand letter to defendant for $220,000, explaining if that amount sufficiently reimbursed plaintiffs, "they will release [defendant] from its obligation to pay pursuant to the insurance policy.  If the amount is not sufficient, then Liberty Mutual will be given the opportunity to resolve the outstanding claim before any suit is filed."[39]  The language contained in the letter and the effect therein alerted defendant to the reasonable possibility of litigation.  Defendant has not established the documents on the privilege log created before that date were created in anticipation of litigation, rather than in defendant's ordinary course of business.

---

[36] *Black & Veatch Corp.*, 297 F.R.D. at 618–19.

[37] *Kannaday*, 292 F.R.D. at 649.

[38] *AKH Co.*, 300 F.R.D. at 688–89.

[39] ECF No. 36-2 at 4.

As to the documents created after December 12, 2018 in defendant's privilege log, the court finds that both elements of the work-product protection were asserted. Therefore, those documents beginning on page 8 of the second supplemental privilege log, starting with the December 14, 2018 entry at 12:14 P.M., are protected by work-product protection. The items created before that date are not subject to work-product protection.

Attorney-Client Privilege

"In federal court, the determination of what is privileged depends upon the dictates of Rule 501 of the Federal Rules of Evidence."[40]  Because subject-matter jurisdiction in this case is based on diversity, Rule 501 directs that "state law governs privilege."  Under Kansas law, the essential elements of the attorney-client privilege are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[41]

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[42]  It protects "advice given

---

[40] *Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *3 (D. Kan. July 13, 2016) (quoting *Tect Aerospace Wellington, Inc. v. Thyssenkrupp Materials NA*, No. 07-1306, 2009 WL 1313230, at *2 (D. Kan. May 12, 2009)); *see also ERA Franchise Sys., Inc. v. N. Ins. Co.*, 183 F.R.D. 276, 278 (D. Kan. 1998).

[41] *Rowan*, 2016 WL 3745680, at *3 (citations omitted).

[42] *Klassen v. Univ. of Kan. Sch. of Med.*, No. 13-2561, 2016 WL 6138169, at *3 (D. Kan. Oct. 21, 2016) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

by the attorney in the course of representing the client," as well as "disclosures of the client … incidental to the professional relationship."[43]

The privilege doesn't apply, however, "to every interaction between attorney and client."[44] There must be a connection between "the subject of the communication and the rendering of legal advice" for the attorney-client privilege to shield the communication from disclosure.[45] Legal advice must predominate for the communication to be protected, i.e., the privilege does not apply where the legal advice is merely incidental to business advice.[46] A party may demonstrate the privilege applies to communications among corporate management employees by "establishing that the communication was made in confidence for the primary purpose of obtaining legal advice." But business data or documents where the element of confidentiality is lacking, for example, would not be protected under attorney-client privilege.[47]

The court finds the attorney-client privilege applies to the remaining documents in defendant's privilege log. They are communications between the claims adjusters and

---

[43] Kan. Stat. Ann. § 60-426(c)(2); *see also Upjohn Co.*, 449 U.S. at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.").

[44] *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 690 (Kan. 2000).

[45] *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1269 (D. Kan. 2008).

[46] *Id.*

[47] *Black & Veatch Corp.*, 297 F.R.D. at 620.

attorney Caryn Daum, who serves as Senior Coverage Counsel for defendant.[48] Ms. Daum provides advice and opinions on legal coverage issues to the claims department, and the communications here constitute legal advice regarding plaintiffs' claim.[49] Notably, the privilege applies to specific instances of legal advice, not to entire documents broadly; defendant has correctly indicated when non-privileged material remains in the relevant document and has left those portions un-redacted.[50]

Privilege Log

After finding the documents at issue are protected by the work-product doctrine and/or attorney-client privilege, the court turns to the adequacy of defendant's privilege log. Although Fed. R. Civ. P. 26(b)(5)(A) doesn't expressly require a privilege log, a party withholding information on privilege grounds generally satisfies the tenets of that rule by providing one.[51] The level of detail required in a privilege log is determined on a case-by-case basis,[52] but courts in this District have stated that a privilege log generally should contain the following:

_____

[48] ECF No. 36.

[49] *Id.*

[50] *See* ECF No. 36-5.

[51] *See Kannaday*, 292 F.R.D. at 647 (describing the basic threshold requirements for a privilege claim); *see also Farha v. Idbeis*, No. 09-1059, 2010 WL 3168146, at *4 (D. Kan. Aug. 10, 2010).

[52] *See Helget v. City of Hays*, No. 13-2228, 2014 WL 1308890, at *3 (D. Kan. Mar. 28, 2014) (stating that a privilege log must provide "sufficient information to allow the other party to assess the claimed privilege"); *see also H & L Assocs. of Kansas City, LLC v. Midwestern Indem. Co.*, No. 12-2713, 2013 WL 5774844, at *7 (D. Kan. Oct. 25, 2013);

13

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2. The date upon which the document was prepared;

3. The date of the document (if different from #2);

4. The identity of the person(s) who prepared the document;

5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"

6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7. The number of pages of the document;

8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of asserted privilege.[53]

At the very least, a privilege log should contain sufficient information so that the opposing party and the court can evaluate the claimed privilege.[54]  If a party fails to carry

---

*Sprint Commc'n Co. v. Big River Tel. Co.*, No. 08-2046, 2009 WL 2878446, at *2 (D. Kan. Sept. 2, 2009).

[53] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 448–49 (D. Kan. 2009) (citing cases) (emphasis added).

[54] *Farha*, 2010 WL 3168146, at *4.

its burden of establishing that any documents withheld are subject to privilege, the court may conclude that the privilege is waived.[55]

Plaintiffs assert defendant's privilege log is "woefully inadequate" because it fails to include sufficient information to evaluate whether the claimed privilege applies.[56] According to defendant, it asked for additional clarification as to specific deficiencies, which it did not receive.[57] Nonetheless, defendant supplemented its privilege log twice.[58] The core objection plaintiffs have is that no privilege should apply until after the filing of the lawsuit on January 13, 2019.[59] The court already addressed this issue above by finding the date work-product protection attached and attaching attorney-client privilege to the other documents. Plaintiffs do not advance any other specific argument as to the sufficiency of the privilege log, and the court finds that the requirements of the privilege log have been met.

Waiver of Privilege

Plaintiffs alternatively argue if the documents are protected by privilege, defendant waived the privilege in one of three ways. The court takes those arguments in turn.

---

[55] *New Jersey*, 258 F.R.D. at 448; *Kannaday*, 292 F.R.D. at 646 ("It is well settled that if a party fails to make the required showing under Fed. R. Civ. P. 26(b)(5)(A) by not producing a privilege log or by producing an inadequate one, courts may deem the privilege waived.").

[56] ECF No. 31 at 8-9.

[57] ECF No. 36 at 7.

[58] *Id.* at 7.

[59] ECF No. 31 at 10.

<u>Waiver by Objection</u>

First, plaintiffs argue defendant waived its objections to the requests for production because it provided conditional responses after objecting. Conditional objections occur "when a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections."[60] To be clear, such objections "preserve nothing and serve only to waste the time and resources of both the parties and the court."[61] Defendant's responses, many of which contain the language "without waiving this objection," are indeed conditional objections.[62] Defendant implicitly concedes the court's disapproval of conditional objections by citing cases from this District where parties have been ordered to serve supplemental responses and remove conditional objections.[63] Defendant points to its amended discovery responses, which remove the conditional objections.[64] With a stern warning to defense counsel that the court might not be so forgiving if he engages in this improper discovery practice in future cases, the court finds defendant has sufficiently remedied the conditional objections.

---

[60] *U, Inc. v. ShipMate, Inc.*, No. 2:14-CV-2287-JTM-TJJ, 2015 WL 3822731, at *3 (D. Kan. June 19, 2015).

[61] *Id.*

[62] ECF No. 36-6.

[63] ECF No. 36 at 21.

[64] *Id.* at 21; ECF No. 36, Ex. 6.

Waiver by Placing Policy at Issue

Plaintiffs' second argument is defendant waived any privilege by placing protected information from the policy at issue.[65] Specifically, plaintiffs argue because defendant references the policy exclusion, and by extension, information in the claim file, in its answer and affirmative defenses, defendant waived the privilege.[66] Plaintiffs point to a District of Kansas case citing *Hearn v. Rhay*, an Eastern District of Washington opinion, which held waiver occurs when "(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense."[67]

Although the District of Kansas has indicated it would likely adopt the *Hearn* standard, plaintiffs' argument fails, as it did in the case they cited. In *DeWitt*, the plaintiff's assertion of waiver failed when she argued the defendant waived its privilege through its affirmative defenses.[68] The court noted this District has rejected the automatic waiver rule,

---

[65] ECF No. 31 at 11.

[66] *Id.* at 10-11.

[67] *Id.* at 11; *DeWitt v. Sw. Bell Tel. Co.*, No. 12-2605-SAC, 2014 WL 695744, at *5 (D. Kan. Feb. 24, 2014).

[68] *DeWitt*, 2014 WL 695744, at *5–6. Similarly, the plaintiff argued the defendant waived the privilege through its employees' deposition testimony. Because the deposition testimony was elicited by counsel's questions, the court held this was not an affirmative act putting at issue reliance on counsel's advice. Plaintiffs do not advance this argument here.

"whereby a party waives the privilege on a mere assertion of a claim or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant."[69] Further, the defendant in *DeWitt* confirmed it did not intend to rely on evidence of the substance of any legal advice it received.[70] While defendant here has not made that confirmation, without additional evidence of reliance of the substance of the advice, the court cannot find waiver has been made.

Plaintiffs then briefly argue the information contained in the claim file is also relevant to the mental capacity and state of the mind of the actor, i.e. to "prove that the insured intended to cause the damage." This argument goes to relevance, not to privilege, and is not persuasive to the court.

<u>Waiver by Disclosure</u>

Third, plaintiffs contend defendant waived any privilege by disclosing the substance of the claim file to plaintiffs in connection with the denial of the insurance claim. Plaintiffs point to two telephone conversations in which defendant's representatives discussed the coverage issue in the context of the legal opinion needed. Plaintiffs argue that constitutes disclosure "of both the reliance and representation as to the substance of the communication with in-house counsel about coverage before the denial."[71] But the first conversation plaintiffs cite involved a representative merely stating to plaintiffs "that the

---

[69] *Id.*

[70] *Id.*

[71] ECF No. 31 at 12.

coverage issue would not be decided until a legal opinion was obtained,"[72] which does not reveal any privileged information, only that defendant was obtaining legal advice. As this court has stated, the "statement that advice was received regarding a certain issue does not reveal the substance of a protected conversation."[73]

The second conversation plaintiffs cite presents a closer call, as it involved plaintiffs learning their coverage was denied "because of information obtained from a legal opinion,"[74] and references the claim log's notation that the legal opinion supported the conclusion that the loss was not covered.[75] But the evidence does not show the substance of the conversation was revealed by that description. The court concludes the two conversations did not reveal the substance of the privileged conversation, merely the fact that lawyers were involved and relied upon to come to the ultimate decision on the claim. Defendant did not waive its privilege through disclosure.

Corporate Representative Deposition

Plaintiffs contend the corporate designee, Sandra Reiser, was unprepared for deposition. Plaintiffs have two main concerns. First, they ask the court to compel additional documents. Defendant responded on July 8, 2019 to the document requests that were included in the deposition notice.[76] Defendant noted in its response it would not

---

[72] *Id.* at 12.

[73] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 428 (D. Kan. 2009).

[74] ECF No. 31 at 12.

[75] ECF No. 31-6.

[76] ECF No. 36 at 6.

produce additional documents at the deposition.[77]  During the deposition, however, defense counsel offered to produce documents regarding claim-handling standards, and did produce such documents.  Plaintiffs, after reviewing the documents, argue they contain no information about the claim-handling process, and "it would seem inconceivable for defendant to have no standard(s) that must be followed before, during, and following the denial of a claim."[78]

Plaintiffs do not appear to be compelling specific documents; rather, they assert certain documents must exist.  Defense counsel did produce the guidelines and, according to the deposition transcript, offered to allow the witness to be questioned on those documents.[79]  At this stage, there is no evidence that defendant is withholding relevant information.  Without such evidence, the court "cannot compel the production of documents have not been uncovered after a reasonable search."[80]  If, at a later stage, it is revealed responsive documents exist but were intentionally not found or produced by defendant, plaintiffs may pursue sanctions.  Based on the record, that is not the case now.

Plaintiffs also argue Ms. Reiser failed to have relevant knowledge about the claim-handling process, making her an unprepared witness.  They cite one case purportedly standing for the proposition that producing an unprepared Rule 30(b)(6) deponent "is

---

[77] ECF No. 31 at 12.

[78] *Id.* at 13.

[79] ECF No. 31-7 at 10.

[80] *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 11516516, at *2 (D. Kan. Nov. 20, 2014).

tantamount to failing to appear."[81]  Specifically, they point to Ms. Reiser's deposition testimony that she was unaware of the claim-handling standards and did not know why those documents were not produced.[82]  The court finds Ms. Reiser sufficiently testified as to the claims-handling process on the record presented.  Ms. Reiser is a claims adjuster who has worked for defendant forty years in its claims department.[83]  According to her deposition and declaration, she reviewed the claim guidelines and job aids and spoke with a Unit Manager to confirm her understanding of the available guidelines.[84]  Additionally, she spoke with four other members of the claims team who were involved in adjusting the claim.[85]

The testimony plaintiffs cite to demonstrate Ms. Reiser's lack of knowledge about the processes is not sanctionable.  Ms. Reiser, when asked about defendant's claim-handling standards, answered plaintiffs' counsel's questions responsively and, when appropriate, testified she did not know the answer to why nothing was produced with regards to the standards.[86]  Additionally, as discussed above, defense counsel offered to allow the witness to be questioned on those documents.[87]  Whether plaintiffs chose to do

_____

[81] ECF No. 31 at 13.

[82] *Id.* at 13.

[83] ECF No. 36 at 7.

[84] *Id.* at 8; ECF No. 36-9; ECF No. 36-7.

[85] ECF No. 36 at 9.

[86] ECF No. 31-7 at 4.

[87] *Id.* at 10.

so is not at issue here, but the court sees nothing sanctionable within Ms. Reiser's testimony as presented.

Second, plaintiffs take issue with three instances where Ms. Reiser claimed privilege regarding defendant's investigation.[88]  During Rule 30(b)(6) depositions, questions may elicit privileged or protected information, for which the deponent may assert the appropriate privilege.[89]  The court, having reviewed the three occasions where Ms. Reiser claims attorney-client privilege, agrees that privilege applies and will not compel this information.  Notably, Ms. Reiser did respond to other questions related to the factual conclusions of the investigation, i.e., the conclusion that the fire was an intentional act and was not covered by the policy.[90]  The three questions at issue pertain to the legal research and strategies of defendant, and Ms. Reiser, acting as an agent, is entitled to invoke attorney-client privilege.

Compelling Appearance

Plaintiffs ask the court to compel Ms. Reiser to testify at trial to remedy the deficiencies in her deposition.  Because the court overrules plaintiffs' objections to her testimony, it declines to compel additional deposition testimony pursuant to any power to sanction granted by Fed. R. Civ. P. 37(d).  The court does not find Ms. Reiser has failed to appear for her deposition.  Moreover, although Ms. Reiser voluntarily traveled to Kansas

---

[88] ECF No. 31 at 14.

[89] *Carolina Indus. Prod., Inc. v. Learjet Inc.*, No. CIV. A. 00-2366JWL, 2001 WL 1155297, at *3 (D. Kan. Aug. 10, 2001).

[90] ECF No. 31-7 at 7.

City, Missouri, for her deposition, she cannot be compelled to travel to Wichita to testify. Under Fed. R. Civ. P. 45(b)(2), the subpoena power of the court extends to places outside the district that are within 100 miles of the place of trial.[91]  Ms. Reiser lives in Indiana and works in Warrenville, Illinois.[92]  Trial is set for Wichita, Kansas, more than 100 miles from Ms. Reiser's home and work.[93]  Plaintiffs have not offered any case law that demonstrates this court has the authority to compel her presence at trial, nor, as defendant points out, have plaintiffs requested Ms. Reiser to testify via live video feed.  The court declines to compel additional testimony from Ms. Reiser at this time.

Motion for Oral Argument

Defendant also requests oral argument on the motion (ECF No. 37), and plaintiffs take no position on the issue.  The court, in its discretion, denies the request in light of the clarity of the parties' written briefing and its belief that argument would not aid in the disposition of the motion.

IT IS THEREFORE ORDERED that plaintiffs' motion to compel (ECF No. 31) is denied.  The court also denies defendant's motion for oral argument (ECF No. 37) as moot.

IT IS FURTHER ORDERED that the parties must e-mail their proposed pretrial order to the undersigned judge's chambers by **November 18, 2019**.  The pretrial conference, absent further order of the court, will be held in Courtroom 223 in **Kansas**

---

[91] Fed. R. Civ. P. 45(b)(2); *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993).

[92] ECF No. 36 at 8.

[93] *Id.* at 8.

**City, Kansas** on **December 3, 2019, at 1:00 p.m.**  Dispositive motions must be filed by

**February 3, 2020**.  A trial setting will be established at the pretrial conference.

IT IS SO ORDERED.

Dated November 4, 2019, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge
