IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTINA TAYLOR and
DONALD TAYLOR,

                Plaintiffs,

v.                                                    Case No. 19-1030-JWB

LM INSURANCE CORPORATION,

                Defendant.

**MEMORANDUM AND ORDER**

This case comes before the court on the parties' motions for summary judgment. (Docs. 56, 64.) The motions have been fully briefed and are ripe for decision. (Docs. 57, 63, 67, 70.) The court held oral argument on the motions on June 25, 2020. Defendant's motion is GRANTED and Plaintiffs' motion is DENIED for the reasons stated herein.

**I.    Uncontroverted Facts**

Plaintiffs Christina and Donald Taylor own a home located at 301 S. Summit Street, El Dorado, Kansas ("the property"). Plaintiffs purchased a homeowner's insurance policy ("the policy") from Defendant LM Insurance Corporation for the property and were the named insureds under the policy. Under the terms of the insurance policy, an insured includes members of the family of the named insureds residing at the property. Plaintiffs' daughter, Zoe, was living at the property with Plaintiffs. Zoe was an insured under the policy.

The policy has two sections. Section one covers property and section two includes liability coverages. In section one, there are four types of coverages: 1) coverage for the dwelling ("coverage A"); 2) coverage for other structures ("coverage B"); 3) coverage for personal property ("coverage C"); and 4) coverage for loss of use ("coverage D"). (Doc. 28, Exh. 1.) With respect

1

to coverages A and B, the policy states that Defendant "insure[s] against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property." (*Id.* at 6 of 16.)  With respect to coverage C, the policy states that Defendant "insure[s] for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded…." (*Id.*)  The policy contains an exclusion for intentional loss.

On August 30, 2018, the property suffered significant damage due to a fire which originated from the bedspread in Plaintiffs' bedroom.  The fire spread from the bed and caused damage to other areas of the property. Zoe was inside the property at the time the fire began. Zoe was angry with her father due to an argument they had earlier in the day.  Because she wanted to upset her father, Zoe used a lighter to ignite the bedspread.  Zoe attempted to put the fire out but was unable to do so.  Zoe went outside and called the fire department.  Although Zoe initially denied starting the fire, she later admitted her involvement.  On September 5, 2018, Zoe told Detective Sergeant Sam Humig of the El Dorado Police Department that she intended to burn the blankets and she got scared once the fire started.  (Doc. 63 at 4; Exh. 4.)

Plaintiffs made a claim for coverage under the policy.  After receiving notice of the loss, Defendant began adjusting the loss and advanced funds to Plaintiffs.  On September 5, Donald Taylor informed Defendant's adjuster, Sandra Reiser, that Zoe was taking Prozac and seizure medicine.  On September 7, Christina Taylor advised Reiser that Zoe was on medication for seizures, had previously been hospitalized in July 2018 for seizures, was taking new medication, and that Zoe was going to undergo a psychological evaluation.  (Doc. 63 at 4-5.)  Donald Taylor had also told Defendant's investigator that he believed Zoe's actions were unintentional due to her mental illness.  (Doc. 63, Exh. 3 at p. 71.)  On September 21, Reiser advised Christina Taylor by phone that Defendant was denying the claim.  At that time, Defendant had not spoken with Zoe or

reviewed her medical records. On September 28, Defendant issued a letter stating that coverage for the loss was denied on the basis that the policy excludes coverage for intentional loss and Defendant determined that Zoe set the fire to the bedspread in the master bedroom.

Plaintiffs filed this action against Defendant asserting that Defendant breached its agreement to provide coverage for the loss. Both parties have now moved for summary judgment.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III. Analysis

Plaintiffs claim that Defendant breached its agreement to insure Plaintiffs by failing to pay the claim and failing to reasonably investigate the claim. Plaintiffs and Defendant have both moved for summary judgment. Defendant moves for summary judgment on the basis that

Plaintiffs cannot recover under the policy because the undisputed facts show that Zoe intentionally started the fire and, as a result, the claim is excluded under the intentional loss provision in the policy. Plaintiffs move for summary judgment on the basis that the intentional loss provision does not exclude the claim and that Defendant failed to reasonably investigate the claim by not investigating Zoe's mental health.

The parties agree that the policy and Kansas law govern this action. In this case, the parties present conflicting positions on the interpretation of the terms in the policy. The interpretation of the policy is a question of law for this court. *See First Fin. Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515, 519 (1998). In construing the policy, the court should consider the policy as a whole and construe it in a way that will give effect to the parties' intent. *Am. Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1058, 179 P.3d 1104, 1109 (2008) (citation omitted). If the policy language is unambiguous, the court must take the unambiguous language "in its plain, ordinary, and popular sense." *Id.* If language in the policy is ambiguous, the court construes the terms in favor of the insured. *Id.* "The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Id.* at 1110. "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Gerdes v. Am. Family Mut. Ins. Co.*, 713 F. Supp.2d 1290, 1296 (D. Kan. 2010) (citing *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (Kan. 1992)).

In determining whether the claim is covered under the policy, the insured bears the burden of proving that the claim falls within the policy. *Magnus, Inc. v. Diamond State Ins. Co.*, 101 F. Supp.3d 1046, 1054 (D. Kan. 2015). The insurer then has the burden to prove that an exclusion in

the policy precludes coverage of the claim. *Id.* "Generally, exceptions, limitations, and exclusions to insurance policies require narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes the duty to define any limitations on that coverage in clear and explicit terms." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 37, 200 P.3d 419, 426 (2009) (citation omitted).

### A. Intentional Loss Exclusion

In this case, there is no dispute that the policy provides coverage for property damage due to fire. (Doc. 28, Exh. 1, policy at p. 6 of 16.) Property damage is covered under section one of the policy. The policy also includes exclusions under section one. Defendant denied coverage on the basis that the intentional loss provision under section one excluded coverage for the claim. That provision stated the following:

SECTION I – EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

. . .

h. Intentional Loss, meaning any loss arising out of any act committed:
(1) By or at the direction of an "insured"; and
(2) With the intent to cause a loss.

*Id.* at 8 of 16.

Defendant argues that this provision excludes the property loss claim by Plaintiffs because it is undisputed that Zoe is an insured and that she intended to set fire to the bedspread. Plaintiffs argue that the intentional loss provision is ambiguous.

Initially, Plaintiffs assert that a common sense reading of the policy "would be to insure the named insured from all losses that were not intentionally caused by or as directed by the named

5

insured." (Doc. 63 at 9.) Plaintiffs argue that a reasonable person would not assume that coverage would be denied if a child set fire to the home. This court is required to interpret the policy according to its terms. "Insured" is defined in the policy as you (the named insureds) and members of the household who are relatives of the named insureds. (Doc. 28, Exh. 1, policy at p. 1 of 16.) It is undisputed that Zoe is an insured. The term "insured" is not ambiguous and Plaintiffs offer no authority to support their position that an intentional acts provision is only applicable to the named insureds.

Next, the parties spend a majority of time interpreting the second part of the exclusion, the "intent to cause a loss." Plaintiffs argue that the term "loss" is ambiguous, and that the intention of the parties was for the language to mean the "intent to cause an [*insured*] loss." (Doc. 63 at 12) (emphasis supplied). Plaintiffs argue that this reading is a common sense reading of the policy because otherwise the exclusion would bar someone who burned down their home after disposing of leaves in a burn barrel. Plaintiffs also argue that a Kansas Supreme Court case regarding intentional acts, *Thomas v. Benchmark Ins. Co.*, 285 Kan. 918, 933, 179 P.3d 421, 431 (2008), is not applicable to this action. Defendant asserts that Plaintiffs' interpretation is not found anywhere in the policy and that the term "loss" means a physical loss to covered property. (Doc. 67 at 14.) During oral argument, defense counsel stated that loss and damage were interchangeable so that physical loss to covered property also means physical damage to covered property.

### What is a loss under the policy?

The term loss is not defined in this policy. "[T]he fact that an insurance policy does not define each term within it does not somehow make an undefined term ambiguous; ambiguity arises only if language at issue is subject to two or more reasonable interpretations and its proper meaning is uncertain." *Newcap Ins. Co. v. Employers Reinsurance Corp.*, 295 F. Supp. 2d 1229, 1240 (D.

6

Kan. 2003) (citing *Harmon v. Safeco Ins. Co.*, 24 Kan. App.2d 810, 816, 954 P.2d 7, 11 (1998)). Although Defendant suggests that loss means physical loss to property, quoting from the policy, Defendant's proposed definition includes the very term that it is defining. The issue is whether the word "loss" is ambiguous in the policy. It is only ambiguous if it is subject to more than one definition. The parties' proposed definitions do not define the word "loss" in two or more reasonable interpretations. Rather, they are defining "loss" by modifying the word "loss." During the hearing, defense counsel further suggested that loss and damage are interchangeable. Reviewing the policy, it is clear that there are different categories or types of losses. The policy refers to loss of property, loss by theft, loss of use, physical loss, direct loss to property described, and several other references to a loss. (*See* Doc. 28, Exh. 1.) The policy also refers to loss in discussing a loss that is not covered by the policy. For example, the policy covers smoke damage but "does not include loss caused by smoke from agricultural smudging or industrial operations." (*Id*. at 5 of 16.) There are also several references to a loss that is not covered even though the peril identified is typically covered. *See id.*

This court has previously interpreted the term "loss" in the context of an insurance policy. In doing so, the court turned to Black's Law Dictionary. Black's defines the term "loss" as "[a]n undesirable outcome of a risk; the disappearance or diminution of value, [usually] in an unexpected or relatively unpredictable way." *B.S.C. Holding, Inc. v. Lexington Ins. Co*., No. 11-CV-2252-EFM, 2014 WL 2207966, at *6 (D. Kan. May 28, 2014), *aff'd*, 625 F. App'x 906 (10th Cir. 2015) (citing BLACK'S LAW DICTIONARY, loss (elec. 9th ed.2009)). This definition is reasonable in reading the policy as a whole. A loss is the disappearance or diminution of value. The parties' suggestions in their briefs as to the definition of loss do not actually define the term loss but are incorporating that term into another meaning. Moreover, the parties' suggested definitions do not

7

result in an ambiguity in the policy. The term "loss" in the policy means that an insured has incurred a disappearance or diminution of value in property covered under the policy. A "loss" would then occur when there has been damage to that covered property as the value of the property is diminished when it has been damaged. Absent any competing reasonable construction of the term "loss," the court cannot conclude that the policy is ambiguous. *See Gerdes*, 713 F. Supp. 2d at 1296.

In their brief, Plaintiffs argue that the ambiguity is clear because the exclusion would apply to a home fire loss if a homeowner was intentionally burning leaves outside and the fire spread resulting in accidental property damage to the home. Plaintiffs argue that the homeowner's loss would be excluded because of the intentional act of harming the leaves. The court's interpretation of loss, however, would not result in an ambiguity. Leaves are not property that is covered under the policy. Moreover, a loss does not occur when a homeowner burns leaves because the homeowner has not suffered a disappearance or diminution of value in property when he burns leaves. Therefore, under such a scenario, the homeowner did not intend to cause a loss as the term has been interpreted by the court. During oral argument, in response to several scenarios, defense counsel argued that any intentional act of setting fire to personal property, not leaves or other items that are intended to be burned such as a candle, would fall under the exclusion. Defense counsel reasoned that the burning of personal property is a loss under the policy because the personal property has been damaged as a result of the intentional burning.

Reading the policy as a whole, a loss under the exclusion is a disappearance or diminution of value in the insured's property. The interpretation is not unreasonable.

### **What is required to show that Zoe *intended* to cause a loss?**

The Kansas Supreme Court has set forth the standard to evaluate an intentional act exclusion in an insurance policy in *Thomas v. Benchmark Ins. Co.*, 285 Kan. 918, 933, 179 P.3d 421, 431 (2008). The court held that "the 'intentional act' or 'intentional injury' exclusion test in Kansas should be as follows: The insured must have intended both the act and to cause some kind of injury or damage. Intent to cause the injury or damage can be actual or it can be inferred from the nature of the act when the consequences are substantially certain to result from the act." *Id.* Notably, the court also indicated that "it is not essential [] that the harm be of the same character and magnitude as that intended." *Id.* (citations omitted).

Plaintiffs argue that *Thomas* is inapplicable as it was a case involving an intentional injury, not property damage. During oral argument, Plaintiffs' counsel argued that an intentional loss provision is different from an intentional injury or intentional act provision. Plaintiffs, however, provide no authority that would support that the interpretation of "intent" is different in an insurance policy that excludes coverage due to an intentional loss. *Thomas* expressly held that the new test was applied to intentional acts or intentional injury. 179 P.3d at 431. Although there does not appear to be a Kansas case interpreting this type of intentional loss provision, other jurisdictions have utilized the standard applicable to intentional acts and/or injury in interpreting what is necessary to determine whether an insurer acted with intent. *See Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 42–43 (Iowa 2012) (interpreting same provision at issue here after an intentional fire and stating that the "intent of an individual to cause an injury may be 'actual or may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm.'") (citation omitted)). Moreover, although the provision at issue is titled intentional loss, the provision is applicable to intentional acts that result in an intentional loss. As such, it is an

9

exclusion based on an intentional act. *See id.* (discussing the intentional loss provision as an intentional act provision).

Besides arguing that *Thomas* is inapplicable, Plaintiffs do not suggest another test to determine intent. Kansas has consistently rejected a requirement that the insured have a specific intent to cause the injury that ultimately occurred from an intentional act. *See Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 245, 865 P.2d 182, 187 (1993), *holding modified by Thomas*, 179 P.3d 421.

Therefore, the court finds that the test in *Thomas* is applicable to the policy in this case which excludes coverage for an intentional loss arising out of any act by an insured with the intent to cause the loss. It is undisputed that Zoe intended to cause damage to the bedspread by lighting it on fire. Zoe's actions in lighting the fire were intentional as she wanted to make her father upset. Zoe also admitted to the investigator that she intended to burn the bedspread and did it for fun.[1] Contrary to Plaintiffs' contention, Kansas law does not require Defendant to prove that Zoe intended to burn down the house. All that is required is the intent to cause some damage (or, as applied to the policy, a loss). *Thomas*, 179 P.3d at 431. The policy then excludes any loss, which would include the damages to the house, because Zoe, an insured, intended to cause a loss. Other jurisdictions applying the exclusion have upheld the denial of coverage. *See Auto-Owners Ins. Co. v. Taylor,* No. 1:17-CV-02632-JMC, 2018 WL 4078579, at *3, 5 (D.S.C. Aug. 24, 2018) (finding no ambiguity in "intent to cause a loss" and holding that an insured "must simply have intended to set the fire, regardless of whether he intended the house to burn down," when interpreting the provision "intent to cause loss."); *S.C. Farm Bureau Mut. Ins. Co. v. Kelly*, 345 S.C. 232, 241, 547

---

[1] Even if intent was in dispute, intent may be inferred by the circumstances. *Thomas*, 179 P.3d at 431. Zoe was upset and wanted to make her father upset by setting fire to the bed in the property. Setting a fire in a home, without that fire being controlled in a fireplace or controlled by some other method, is likely to cause damage to the home. Therefore, in the alternative, faced with the undisputed facts before the court, Zoe's intent to cause damage by starting the fire can be inferred.

10

S.E.2d 871, 876 (Ct. App. 2001); *Deeter v. Indiana Farmers Mut. Ins. Co.*, 999 N.E.2d 82, 85 (Ind. Ct. App. 2013); *Smith v. Am. Family Mut. Ins. Co.*, 2007 WL 2728277, ¶¶ 26-29, 740 N.W.2d 901 (Wisc. Ct. App. Sept. 20, 2007) (finding the provision unambiguous and holding that the "intentional loss exclusion applies if Antoinette intended the act that caused the loss, i.e., setting fire to the curtains, regardless of whether Antoinette intended to cause the total loss of the home.")

Plaintiffs make several references to Zoe's mental health and argue that she was unable to form the requisite intent. The uncontroverted facts, however, are that Zoe intended to burn the blankets. Moreover, "[i]n Kansas, sanity is also presumed until the contrary is established." *Shelter Mut. Ins. Co. v. Williams By & Through Williams*, 248 Kan. 17, 29, 804 P.2d 1374, 1383 (1991), *holding modified by Thomas*, 179 P.3d 421 (citing *Miller v. Hudspeth*, 164 Kan. 688, Syl. ¶ 8, 192 P.2d 147 (1948)). Plaintiffs have the burden of proof to rebut the presumption of sanity and intent by introducing evidence to show that Zoe's mental condition prevented her from forming the necessary intent. *Id.* Plaintiffs have not done so. The facts only establish that Zoe was on medication, she had been hospitalized for seizures, and she was going to be evaluated. Plaintiffs have not attempted to introduce any facts that she was unable to form intent. Therefore, Plaintiffs have not rebutted the presumption of sanity.

### B. Application of Intentional Loss Provision

The court finds that the intentional loss provision is unambiguous. That provision precludes coverage for any loss if that loss arises out of any act committed by an insured with the intent to cause a loss. Zoe is an insured under the policy. Based on the undisputed facts, Zoe intentionally set fire to the bedspread to upset her father.[2] As a loss has been interpreted to mean a disappearance or diminution of value, the court finds that the damage to the bedspread is a loss.

---

[2] Plaintiffs assert that intent is disputed. However, Plaintiffs' proposed facts state that "Zoe admitted to the investigating officer that she intended to burn blankets on her dad's side of the bed." (Doc. 63 at 4.)

11

Therefore, Zoe intentionally caused a loss. The resulting loss of approximately $200,000 to other parts of the property arose out of the fire set to the bedspread. Accordingly, that loss is excluded under the policy. Because the policy excludes any loss that arises of out an act committed by "an insured," the policy does not permit Plaintiffs to recover under the policy. *See Pink Cadillac*, 925 P.2d at 458 ("The parties cite numerous cases on whether an innocent coinsured is entitled to coverage. In *Catholic Diocese of Dodge City v. Raymer*, 16 Kan. App.2d 488, 493, 825 P.2d 1144, *aff'd* 251 Kan. 689, 840 P.2d 456 (1992), this court concluded that '[a]n insured' or 'any insured' refers to any and all insureds under the policy. Accordingly, since Staab was an insured under the policy and the language of the concealment clause refers to 'an insured,' Pink Cadillac and Quan are precluded from coverage.") Therefore, Defendant is entitled to summary judgment on the claim of breach of contract for failing to pay on the claim. Plaintiffs' motion for summary judgment on this claim is denied.

### C. Severability Clause

Plaintiffs argue that even if the intentional loss provision is not ambiguous by its terms, the severability clause in the policy creates an ambiguity. Defendant argues that the severability clause only applies to personal injury coverage and not to property damage.

In the policy, there are two sections. Section one includes property coverages and section two includes liability coverages. Section two includes coverage for personal liability and medical payments to others. Both sections have subsections setting forth exclusions. In section two's exclusions, the policy states as follows: "2. Severability of Insurance. This insurance applies separately to each 'insured.' This condition will not increase our limit of liability for any one 'occurrence.'" (Doc. 28, Exh. 1 at 14 of 16.) Plaintiffs assert that the presence of the severability clause renders the language "an insured," contained in the intentional loss provision, ambiguous.

Therefore, Plaintiffs contend that the intentional loss provision must be applied separately to each insured allowing Plaintiffs to recover under the policy.

In *Raymer*, the Kansas Supreme Court addressed the question of whether a severability clause, which stated that "this insurance applies separately to each insured," rendered the language of "an insured" in the intentional acts provision ambiguous. 840 P.2d at 459. The court held that the "insertion into the policy of a severability of interests clause made ambiguous the otherwise unambiguous language of the exclusion for intentional acts by an insured." *Id.* at 462. In this case, Plaintiffs assert that the severability clause renders the intentional loss provision ambiguous. The severability clause, however, is contained in section two. Defendant argues that the clause is only applicable to the coverages in section two and does not apply to the coverages and exclusions in section one.

In support of Plaintiffs' position, Plaintiffs point to *Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co.*, 22 Kan. App. 2d 944, 950, 925 P.2d 452, 457 (1996). In that case, the court held that a severability clause that was contained in the general liability section did not apply to actions to enforce property coverage. In so holding, the court looked at the language in the policy, including language immediately preceding and following the severability clause. Plaintiffs argue that *Pink Cadillac* is distinguishable from this case because there is "no language from which a reasonable insured could be expected to understand that the severability clause was limited to liability coverage." (Doc. 63 at 14.) The court disagrees.

Reading the policy as a whole, it is clear that the severability clause is only applicable to the coverages contained in section two. First, the severability clause is contained within a section titled "Section II - Conditions." (Doc. 28, Exh. 1, at 14 of 16.) The heading clearly distinguishes the conditions as being applicable to section two. Moreover, section one has its own subsection

13

titled "Section I - Conditions." There is also a section titled "Sections I and II - Conditions" that, by its heading, is applicable to the coverages in both sections one and two. (*Id.* at 15.) Next, the language in the first paragraph of the conditions for section two is titled "Limit of Liability." (*Id.* at 14.) Reviewing the language in that paragraph, it is only applicable to the coverages under section two by its terms. This paragraph discusses limits for liability under coverage E (personal liability) and coverage F (medical payments to others). Turning to the language in the severability of insurance provision, it limits the condition by stating that this will not increase the limit of liability for any one "occurrence." (*Id.*) The use of the term "occurrence" is significant because "occurrence" is used in the policy when referring to the coverage under section two. Specifically, there is coverage for bodily injury or property damage "caused by an occurrence." (*Id.* at 11.) The term "occurrence" does not occur in section one. Finally, the subsection immediately following the severability of insurance discusses the insured's "Duties After Loss." It begins by saying, "in case of an accident or 'occurrence,' the insured" has to undertake certain steps. (*Id.* at 14.) This paragraph is notable for a couple of reasons. First, it refers to an "occurrence" instead of loss. Second, a similar paragraph is contained under "Section I - Conditions." That paragraph notes that an insured has certain duties in "case of a loss to covered property." (*Id.* at 8.)

Reading the policy as a whole, it a clear that the section two conditions, which include the severability clause, are only applicable to the coverages in section two. *See Pink Cadillac Bar & Grill, Inc*., 925 P.2d at 457. Therefore, the severability clause cannot create an ambiguity in the intentional loss provision that is contained in the section one exclusions.

### D. Duty to Investigate

Plaintiffs also contend that Defendant breached the contract by failing to investigate the claim in good faith. Defendant asserts that Plaintiffs cannot succeed on this claim as the policy

14

does not provide coverage under the intentional loss provision and that Defendant does not owe any additional duties under the contract. Under Kansas law, an insurer is required to act in good faith in investigating the claim. *Foster v. Stonebridge Life Ins. Co.*, 50 Kan. App. 2d 1, 27, 327 P.3d 1014, 1032 (2012). In determining whether the insurer acted in good faith, the court is to look at the circumstances when the claim is denied. *Id.* At the time of the denial, Defendant had been informed by Plaintiffs that they believed that their daughter did not intentionally start the fire because of her mental condition. Defendant was also told she was on medication and had been hospitalized for seizures. Defendant was also provided with the record from the investigator detailing his interviews with Zoe. As set forth in the facts, Zoe told the investigator that she intended to burn the bedspread because she was mad at her father.

As stated previously, although an insurer has the burden to show that an exclusion applies, Plaintiffs have the burden to rebut the presumption of sanity. *Williams*, 804 P.2d at 1383. As discussed above, the evidence submitted does not support a finding that Zoe did not act with the requisite intent. Plaintiffs have set forth no evidence of Zoe's diagnosed mental condition that would affect her mental capacity.[3] "Where the claim, as submitted, is excluded by clear and unambiguous language in the policy, the insurer has no duty to investigate the claim further." *Sec. Ins. Co. of Hartford v. Wilson*, 800 F.2d 232, 235 (10th Cir. 1986). Importantly, Plaintiffs have failed to identify any facts that would be discovered through investigation that would have resulted in a determination that Zoe was unable to form intent. Rather, the facts presented are the same facts that were already disclosed to Defendant during the pendency of the claim, which included the fact that Zoe intended to burn the bedspread to upset her father. "This case is, therefore, not

---

[3] In review of the claim notes, the record states that Plaintiffs were going to provide medical information to Defendant within a week of September 7, 2018. (Doc. 63, Exh. 5.) The claim records do not indicate that medical records and/or additional information were received or reviewed by Defendant and Sandra Reiser testified in her deposition that they did not receive medical records. (Doc. 63, Exh. 3 at 89.)

15

about a failure to perform an adequate fact investigation." *See Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, 237 F. Supp.3d 1135, 1141 (D. Kan. 2017), *aff'd*, 737 F. App'x 865 (10th Cir. 2018) (facts are the same as they were at the time of the denial of the claim) (citing *Farm Bureau Insurance Co. v. Carr*, 215 Kan. 591, 598, 528 P.2d 134, 140 (1974)).

### E. Negligent Breach

Plaintiffs also assert that Defendant was negligent in investigating the claim and assert this as a claim for negligent breach of contract. Plaintiffs do not cite any authority for the proposition that Kansas law provides for a claim of negligent breach of contract. There is no separate action for "negligent breach of contract." *Marshel Investments, Inc. v. Cohen*, 6 Kan. App.2d 672, 683, 634 P.2d 133, 142 (1981). "[I]f there is a breach of contract, there is a breach of contract, whether because of intentional conduct, inability to perform, accident, negligence, or whatever. It is inappropriate to denominate the available contract cause of action as one for negligent breach of contract." *Id.*

The court has already determined that Defendant did not breach the contract; therefore, Defendant's motion for summary judgment on Plaintiffs' claim for negligent breach of contract is granted.

### F. Mortgage Claim

Plaintiffs also contend that Defendant breached the contract by failing to resolve the matter pursuant to the mortgage clause. Under that clause, a denial of a claim does not apply to a valid claim of the mortgagee. The policy states as follows:

> If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
>
> a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

>    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
>    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the Mortgagee.

(Doc. 28, Exh. 1 at 10 of 16.)

Although Plaintiffs argue that Defendant breached this provision in the policy by failing to pay the loss to the mortgagee or effectuating a prompt settlement, Plaintiffs have not suggested that the mortgagee made a claim as required under the policy. Rather, Plaintiffs' statement of facts merely identifies Wells Fargo as the mortgagee. Defendant cites to Plaintiffs' depositions which suggest that Wells Fargo was still investigating and presumably waiting for the outcome of the litigation. (Doc. 67 at 27.) Because Plaintiffs have not established that Wells Fargo submitted a claim as required by the policy, Plaintiffs cannot show that Defendant breached this provision.

## IV. Conclusion

This is a difficult case because, in many ways, the outcome seems unfair. Plaintiffs are undisputedly innocent insureds. Plaintiffs have been paying their insurance premiums and, as any insured, would expect that a fire loss would be covered under a policy. The circumstances of this case make the loss all the more bitter because it was caused by Plaintiffs' own child. However, in order to allow this case to proceed to trial, the court would have to be able to instruct a jury that the intentional loss provision must be interpreted in a manner that might allow the jury to find for Plaintiffs under the facts of this case. Plaintiffs argue that the exclusion only applies if Zoe intended to cause an insured loss, (Doc. 63 at 11-12), but that interpretation would still require a defense verdict because the bedspread was clearly personal property covered under coverage C of the policy; thus, under Plaintiffs' proposed interpretation, the undisputed facts still show that Zoe intended to cause an insured loss thereby barring coverage under the exclusion. Accordingly, in

17

order to allow this case to go to a jury, the court would have to interpret the exclusion as requiring Defendant to show that Zoe acted with the intent to cause Defendant to pay out money for a covered loss under the policy. The court concludes that the language of the exclusion simply cannot be stretched that far. The court is required to enforce the policy according to its terms, and under Kansas law those terms compel the result reached herein.

Defendant's motion for summary judgment (Doc. 56) is therefore GRANTED and Plaintiffs' motion (Doc. 64) is DENIED. The clerk is directed to enter judgment in favor of Defendant.

IT IS SO ORDERED this 15th day of July, 2020.

\_\_\_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE